IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MORRIS J. PETTIGREW, SR. #359809    *

         Plaintiff    *

     v.    *   CIVIL ACTION NO. GLR-12-2559

WEXFORD MEDICAL SERVICES    *
DOCTOR STALLWORTH
GREG FLURY, P.A.    *
PHYSICIAN'S ASSISTANT (NAME
  UNKNOWN)    *

         Defendants    *

*****

**<u>MEMORANDUM</u>**

I. Background

On August 27, 2012, the Court received this 42 U.S.C. § 1983 verified Complaint for injunctive relief and damages from Morris Pettigrew, Sr., an inmate currently housed at the Western Correctional Institution ("WCI") in Cumberland, Maryland. Plaintiff contends that in June of 2012, he was scheduled to see a physician's assistant ("PA") to obtain clearance to work in the dietary department. He claims that the PA diagnosed him with scoliosis[1] of the spine, but denied him all requested treatment, i.e. MRI, hospital visits, cane, and braces. Plaintiff claims that he was subsequently given a cane for one month, but no other treatment for his scoliosis, which he asserts has been getting progressively worse since 2010. ECF No. 1. He further claims that blood chemistry has indicated possible infections with hepatitis or lupus. Id.

---

[1] Scoliosis is a sideways curvature of the spine that occurs most often during the growth spurt before puberty. Most cases of scoliosis are mild, but some children develop spine deformities that continue to get more severe as they grow. See http://www.mayoclinic.com/health/scoliosis.

Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, which remains unopposed.[2] ECF No. 12. The matter is ripe for consideration and may be determined without a hearing. See Local Rule 105.6 (D. Md. 2011).

## II. Standard of Review

Where a plaintiff proceeds without counsel, his filing is to be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

Because matters outside the pleadings shall be considered, Defendants' Motion shall be treated as a motion for summary judgment. Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

The "party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.' " Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)). The court should "view the

---

[2] Pursuant to the dictates of Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), on October 1, 2013, the Court notified Plaintiff that Defendants had filed a dispositive motion, he was entitled to file opposition materials, and his failure to file an opposition or to show a genuine dispute of material fact could result in the dismissal of his case. ECF No. 13.

evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [his] favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644–45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (quoting Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir. 1993) (internal quotation marks omitted).

In Anderson, the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." Id. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Therefore, on the issues for which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing there is a genuine issue for trial. Although a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit in order to survive a summary judgment motion. See Roberson v.

Hayti Police Dep't., 241 F.3d 992, 994-95 (8th Cir. 2001) (citations omitted).[3]

### III. Discussion

#### A. Denial of Medical Care

In reliance on excerpts from Plaintiff's medical record and the Affidavit of Dr. Monica Stallworth, Defendants state that Plaintiff is a 34-year-old male with a medical history significant for chronic asthma and back pain. ECF No. 12, Exs. 1 & 2. They note that on June 12, 2012, Plaintiff was seen in the Chronic Care Clinic ("CCC") for an asthma evaluation. He made no complaints of back pain, limb numbness, or loss of function. On July 16, 2013, Plaintiff was seen by Dr. Stallworth in response to his complaint that he had difficulty ambulating. He asserted that when previously housed at another prison, he had been diagnosed with scoliosis and told that he could obtain a cane to "assist his ambulation." Id., Ex. 1 at p. 3; Ex. 2. He was observed to be in no apparent distress, but was prescribed a trial period for use of a cane when ambulating to see if his gait improved and was scheduled for a follow-up appointment in the CCC. Id., Ex. 1 at pgs. 3-4 & 13; Ex. 2. The cane was issued on July 16, 2012. Id. At the end of the one-month trial period, however, there was no "demonstrable" improvement to Plaintiff's ambulation, and the cane was discontinued. Id., Ex. 2.

On September 9, 2012, Plaintiff was seen by Dr. Ottey for complaints of back pain. Id., Ex. 1 at pgs. 5-7; Ex. 2. He reported a history of scoliosis, pain in the mid and lower left back, stiffness in the back, intermittent difficulty standing up, muscle spasms, numbness in his hands, right thigh and toes, and tingling in the right thigh, hands and feet. ECF No. 12, Ex. 1 at pgs. 5-7; Ex. 2. He otherwise appeared to be in no distress and noted he was able to work in the kitchen without much

---

[3] In this Circuit, verified complaints by self-represented litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based upon personal knowledge. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1971).

difficulty. Upon objective examination, Plaintiff's spine was positive for posterior tenderness and paravertebral (adjacent to the spinal column) muscle spasm and tender with moderate pain associated with motion. Plaintiff's right and left hips were also tender with moderate pain associated with motion. His gait was slowed. He was instructed to do back and knee exercises and informed to continue the self-management program developed for him by physical therapy. He was prescribed muscle rub, Baclofen, and Indomethacin.[4] ECF No. 12, Ex. 1, pgs. 6-7. Bilateral x-rays were ordered of Plaintiff's hips and knees. The x-rays revealed mild degenerative changes in both hip joints. The x-rays of the knees, however, revealed no evidence of acute fractures, dislocation, subluxation, or joint effusion. Id., Ex. 1 at p. 12; Ex. 2.

On October 16, 2012, Plaintiff was seen in the CCC by Dr. Yahya for a follow-up appointment as to Plaintiff's back pain. Id., Ex. 1 at pgs. 8-9; Ex. 2. Plaintiff also complained of bilateral knee pain and requested a knee and back brace. Upon examination, Plaintiff's knees and back were found to be unremarkable. The examination of the spine revealed no abnormality of the thoracic curvature or lumbar curvature. There was no finding of scoliosis or kyphosis[5] and the spine was negative for posterior tenderness and exhibited normal extension and lateral flexion. Straight leg raising and elevated leg testing were negative. Both knees were negative for joint deformity, eat, or effusion (water on the knee). They had a full range of motion. ECF No. 12, Ex. 1 at pgs. 8-9; Ex. 2. His medications were continued and he was advised to increase his activity level.

---

[4] Baclofen is a muscle relaxant and Indomethcin is a non-steroidal anti-inflammatory drug commonly used to treat pain or inflammation caused by many conditions, such as arthritis, gout, bursitis, or tendinitis. See http://www.rxlist.com

[5] Kyphosis is a condition of over-curvature of the thoracic vertebrae (upper back). See http://www.mayoclinic.com

On February 23, 2013, Plaintiff was seen for a dietary physical examination and kitchen hygiene instruction. Id., Ex. 1 at p. 10. No negative comments were noted. Defendants claim that since February 2013, despite multiple encounters with medical staff, Plaintiff has not complained or filed sick-call requests for treatment of back pain or for any symptoms necessitating laboratory work-up to rule out hepatitis or lupus. Moreover, they assert that none of Plaintiff's laboratory tests taken since 2010 have been positive for lupus or hepatitis. Id., Ex. 1at pgs. 14-24.

Although Plaintiff has failed to respond to this motion for summary judgment, the allegations in his verified Complaint may be considered competent evidence. See Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) ("[D]efendants' argument fails to take note of the fact that [Plaintiff] verified his complaint by attesting under penalty of perjury that the statements in the complaint were true to the best of his knowledge. A verified complaint is to be treated as an affidavit for summary judgment purposes . . . .")

B. Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Gregg v. Georgia, 428 U.S. 153, 173 (1976) (citing Furman v. Georgia, 408 U.S. 238, 392-93 (1972) (Burger, C. J., dissenting). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need.[6]

---

[6] The medical condition at issue must be serious. See Hudson v. McMillian, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). "A 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Foelker v. Outagamie Cnty., 394 F.3d 510, 512 (7th Cir. 2005) (citing Jackson v. Ill. Medi–Car, Inc., 300 F.3d 760, 765 (7th Cir.2002)).

See Estelle, 429 U.S. at 106. Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. See Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires "subjective recklessness" in the face of the serious medical condition. Farmer, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." Rich v. Bruce, 129 F. 3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter… becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" Brice v. Va. Beach Correctional Ctr., 58 F. 3d 101, 105 (4th Cir. 1995) (quoting Farmer, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." Farmer, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. Brown v. Harris, 240 F. 3d 383, 390 (4th Cir. 2001).

Inmates do not have a constitutional right to the treatment of their choice, Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986), and disagreements between medical staff and an inmate over the necessity for or extent of medical treatment do not rise to a constitutional injury. See Estelle, 429 U.S. at 105-06; Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (citing Gittlemacker v. Prasse, 428 F.2d 1, 6 (3rd Cir.1970)); see also Fleming v. LeFevere, 423 F. Supp. 2d 1064, 1070-71 (C.D. Cal. 2006) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)).

The record shows that WCI medical personnel were aware of Plaintiff's medical needs. He

was repeatedly seen by PAs and doctors for his complaints of back and limb pain and numbness. Further, he received multiple laboratory tests and x-rays, all of which were within normal range; was prescribed muscle relaxants and anti-inflammatory medications for his claims of pain; and was given a cane to see if it would help with his gait. At best, Plaintiff's Complaint alleges that he is not satisfied with the conservative medical care that has been provided. Plaintiff does not and cannot allege that Defendants had a culpable state of mind and failed to provide him with treatment for his complaints. The actions of medical staff are hardly consistent with someone who is deliberately indifferent to or recklessly disregarding a serious medical condition.[7] As already indicated, the fact that he did not receive additional hospital consults and MRI tests of his own choosing, does not set out an Eighth Amendment claim.

## IV. Conclusion

For the aforementioned reasons, Defendants' Motion for Summary Judgment shall be granted. Judgment will be granted in favor of Defendants and against Plaintiff. A separate Order follows.

December 16, 2013

/s/
_____
George L. Russell, III
United States District Judge

---

[7] There is conflicting evidence as to whether Plaintiff suffers from any diagnosed condition of the spine.